Filed 10/9/15  Lafleur v. Woodbridge Structured Funding CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| FATANAH LAFLEUR,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>WOODBRIDGE STRUCTURED FUNDING, LLC,<br><br>    Defendant and Appellant. | B258832<br><br>(Los Angeles County<br>Super. Ct. No. BC498722) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Steven J. Kleifield, Judge.  Affirmed.

Haight Brown & Bonesteel and William E. Ireland, for Defendant and Appellant.

Rglawyers, Solomon E. Gresen and Robert C. Hayden; Benedon & Serlin, Douglas G. Benedon and Gerald M. Serlin for Plaintiff and Respondent.

_____

Fatanah LaFleur sued Woodbridge Structured Funding, LLC for sex discrimination, alleging she was fired due to her pregnancy. A jury returned a verdict for LaFleur and she was granted an attorney's fee award by the trial court. Woodbridge challenges the judgment on two grounds—the trial court erroneously instructed the jury on its mixed-motive defense and it granted attorney's fees to LaFleur despite her failure to show she was entitled to a fee award. We find no errors and affirm the judgment.

## FACTS

LaFleur began working at Woodbridge in November 2011. She became pregnant in early 2012, and was terminated from her position on April 25, 2012. LaFleur brought suit against Woodbridge, alleging violations of the California Fair Employment and Housing Act (FEHA; Gov. Code, §§ 12940 and 12945.) At trial, Woodbridge presented testimony from LaFleur's supervisor, who denied knowing she was pregnant at the time he decided to fire her. He testified he had instead repeatedly warned her about gossiping and being disruptive in the office. LaFleur testified her supervisor knew about her pregnancy and had fired another pregnant employee the month before. The jury returned a verdict for LaFleur and awarded her $30,000 in damages. Attorney fees were sought under Government Code section 12965, subdivision (b) for $635,000. Those were denied on the ground the requested fees were not reasonable. The trial court found the lodestar to be $160,780 and declined to impose a multiplier. Woodbridge timely appealed.

## DISCUSSION

### I. Jury Instruction

Woodbridge's defense at trial rested on the argument that LaFleur was fired for a legitimate reason: she was disrupting the office environment by gossiping and discussing non-work related subjects. As a result, Woodbridge requested the trial court instruct the jury on the mixed-motive defense, found in CACI No. 2512. That instruction reads in relevant part, "If you find Fatanah LaFleur's excessive gossiping and related behavior which was disruptive of the working environment was also a substantial motivating reason, then you must determine whether the defendant has proven that it would have discharged Fatanah LaFleur anyway based on Fatanah LaFleur's excessive gossiping and

2

related behavior which was disruptive of the working environment even if it had not also been substantially motivated by discrimination." The trial court gave this instruction to the jury. Woodbridge's defense was also reflected in the special verdict form. In particular, question number 4 asked, "Would Woodbridge Structured Funding, LLC have discharged Mrs. LaFleur anyway based on her (poor) job performance had Woodbridge Structured Funding, LLC not also been substantially motivated by pregnancy discrimination?"

During deliberations, the jury submitted the following question to the trial court about question number 4: "Are you asking if she would have been discharged on the same date, during the same timeframe, or at any point because of her poor performance? Please clarify as to when." The trial court noted the word "when" was underlined three times. Recognizing that the question related to the mixed-motive instruction under CACI No. 2512, the trial court discussed the instruction with the parties. It noted the comments for CACI No. 2512 quoted from the California Supreme Court's decision in *Harris v. City of Santa Monica* (2013) 56 Cal.4th 203 (*Harris*), which held, "when we refer to a same-decision showing, we mean proof that the employer, in the absence of any discrimination, would have made the same decision *at the time it made its actual decision.*" (*Harris*, at p. 224, original italics.)

The trial court suggested they rely on *Harris* to answer the jury's question. Plaintiff's counsel agreed. Defense counsel, however, was unwilling to deviate from the exact language contained in CACI No. 2512. The trial court ultimately answered the jury's question with the language, "at the time it made its actual decision." Shortly thereafter, the jury returned a verdict in favor of LaFleur, answering "no" to question number 4.

Woodbridge argues on appeal the trial court's focus on the time frame mentioned in *Harris* improperly "gutted" Woodbridge's mixed-motive defense. The trial judge gave an entirely different instruction which was at least more confusing and at worst prejudicially eliminated Woodbridge's defense. The trial court denied the jury the opportunity to return a verdict in Woodbridge's favor. According to Woodbridge,

3

the trial court was obliged "either not to answer the jury's question, perhaps repeating CACI 2512, or to respond in a manner that clarified the important meaning of those words." We disagree and find the trial court instructed the jury with a correct statement of the law.

"'A party has a right to jury instructions on his or her theory of the case, if they are reasonable and supported by the pleadings and the evidence, or any inference which may properly be drawn from the evidence. [Citations.] This right is designed to ensure the jury has "a full and complete understanding of the law applicable to the facts" of the case before it. [Citations.]'" (*Thomas v. Intermedics Orthopedics* (1996) 47 Cal.App.4th 957, 965.) "'The propriety of jury instructions is a question of law that we review de novo. [Citation.]' [Citation.] If an instruction is found to be erroneous, reversal is required only when 'it appears probable that the improper instruction misled the jury and affected [its] verdict. [Citation.]' [Citation.]" (*SCC Acquisitions, Inc. v. Central Pacific Bank* (2012) 207 Cal.App.4th 859, 863.) "No judgment shall be set aside . . . in any cause, on the ground of misdirection of the jury, . . . unless, after an examination of the entire cause, the [reviewing] court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13; *LeMons v. Regents of University of California* (1978) 21 Cal.3d 869, 875.) A reviewing court will not presume that an instructional error prejudiced an appellant; instead, the burden is on the appellant to demonstrate that the error prejudiced an appellant. (*Boeken v. Phillip Morris, Inc.* (2005) 127 Cal.App.4th 1640, 1678.) Our analysis of a response to a jury question remains the same as for any instruction given to a jury. (*Sandoval v. Bank of America* (2002) 94 Cal.App.4th 1378, 1388-1389.)

We find the court's decision in *Sesler v. Ghumann* (1990) 219 Cal.App.3d 218 (*Sesler*), to be particularly useful. There, the jury submitted a question to the trial court, who refused to deviate from the standard jury instruction it had already given and simply reread it. The trial court declined to give the defendant's proposed instruction even though it would have answered the precise question posed by the jury. In reversing the judgment, the appellate court held, "Where original instructions are inadequate, and the

jury asks questions indicating their confusion and need for further explanation, failure to give proper additional instructions is usually reversible error. [Citation.] The trial judge's duty to adequately instruct the jury 'becomes particularly acute when the jury asks [for] specific guidance.' [Citation.]" (*Sesler, supra,* at p. 227.)

With this in mind, we find no error in the trial court's decision to answer the jury's question with a correct statement of the law. Neither was the trial court obligated to repeat CACI No. 2512 or refuse to answer the question outright, as suggested by Woodbridge. (*Powerhouse Motorsports Group, Inc. v. Yamaha Motor Corp., U.S.A.* (2013) 221 Cal.App.4th 867, 881 ["'it is error to give, and proper to refuse, instructions that unduly overemphasize issues, theories or defenses either by repetition or singling them out or making them unduly prominent although the instruction may be a legal proposition'"].) Indeed, *Sesler* tells us that it would have been reversible error to do so. (*Sesler, supra,* at p. 227.)

It is clear that the indicated language in *Harris, supra,* 56 Cal.4th at page 224 answered precisely the question posed by the jury. The trial court's answer did not mislead the jury with respect to the governing law. The jury was sufficiently instructed on CACI No. 2512 and Woodbridge's mixed-motive defense, when it asked its question. It is not the case that the jury replaced CACI No. 2512 with the trial court's later response regarding the timing of the decision to terminate.

Nevertheless, Woodbridge argues that the phrase, "at the time it made its actual decision" is ambiguous and merely dicta from *Harris.*[1] It is neither. In *Harris,* the California Supreme Court carefully considered the issue and relied on U.S. Supreme Court precedent when it advised, "Mindful of the FEHA's purposes, we proceed to address what legal consequences flow from an employer's proof that it would have made the same employment decision in the absence of any discrimination. To be clear, when we refer to a same-decision showing, we mean proof that the employer, in the absence of

---

[1] Even if dicta, which it is not, we are mindful of the sound advice given by our colleagues in Division Six: "Generally speaking, follow dicta from the California Supreme Court." (*Hubbard v. Superior Court* (1997) 66 Cal.App.4th 1163, 1169.)

any discrimination, would have made the same decision *at the time it made its actual decision*. (See *Price Waterhouse* [*v. Hopkins* (1989) 490 U.S. 228, 252] ['proving "'that the same decision would have been justified . . . is not the same as proving that the same decision would have been made'"'; employer cannot make a same-decision showing 'by offering a legitimate and sufficient reason for its decision if that reason did not motivate it at the time of the decision'].)" (*Harris, supra,* 56 Cal.4th at p. 224.)

The *Harris* court later summarized its holding by stating, "When a plaintiff has shown by a preponderance of the evidence that discrimination was a substantial factor motivating his or her termination, the employer is entitled to demonstrate that legitimate, nondiscriminatory reasons would have led it to make the same decision at the time." (*Harris, supra,* at p. 241.) Contrary to Woodbridge's contention, this language was not an "afterthought" in *Harris*; it was the holding.

According to Woodbridge, the phrase is ambiguous because it is unclear whether an employer suffers a failure of mixed-motive proof if a decision to discharge an employee for non-discriminatory reasons is made on January 1, but the firing actually occurs on July 4. "Or must the decision to fire be virtually simultaneous with the conduct that caused the decision?" Woodbridge's attempt to artificially constrict the high court's holding is unavailing. The high court meant what it said. The phrase "at the time it made its actual decision" was clearly intended to encompass time frames which extend over longer or shorter periods of time. Different cases present different facts, all of which the jury is entitled to consider to determine if "the employer, in the absence of any discrimination, would have made the same decision *at the time it made its actual decision*." (*Harris, supra,* at p. 224.)

## II.     Attorney's Fees

Woodbridge next contests the trial court's award of $160,780 in attorney's fees in a case involving a $30,000 jury verdict. Woodbridge contends LaFleur failed to carry her burden to prove an entitlement to any fee award and thus, the trial court should have made no award at all. After the jury's verdict, LaFleur submitted a request for attorney's fees of $317,500 plus a multiplier of 2.0 for a total fee award of $635,000. The multiplier

was intended "to compensate Plaintiff for the risk of non-payment, the inevitable delay in receiving payment, and to encourage Plaintiff's attorneys and other civil rights attorneys to undertake public interest litigation of similar importance in the future." Woodbridge opposed LaFleur's "grossly inflated" request, suggesting the trial court reduce the amount to $91,040. Finding LaFleur entitled to attorney's fees as the prevailing party under the FEHA statutes, the trial court computed a lodestar of $160,780, declining to reduce that amount or apply a multiplier.

FEHA entitles a prevailing plaintiff to recover attorney fees: "In civil actions brought under this section, the court, in its discretion, may award to the prevailing party, including the department, reasonable attorney's fees and costs, including expert witness fees." (Gov. Code, § 12965, subd. (b).) Courts have held a prevailing plaintiff should ordinarily recover attorney fees in FEHA actions unless special circumstances would render such an award unjust. Thus, "'the "discretion to deny a fee award to a prevailing plaintiff is narrow." [Citation.]'" (*Steele v. Jensen Instrument Co*. (1997) 59 Cal.App.4th 326, 331.) A trial court's award of attorney's fees under FEHA is reviewed under an abuse of discretion standard. (*Ibid.*)

We find no abuse of discretion in the trial court's award. As the California Supreme Court has explained, "'The "experienced trial judge is the best judge of the value of professional services rendered in his court . . ."'" (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095.) In a 15-page opinion, the trial court carefully calculated the lodestar "'after consideration of a number of factors, including the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances in the case.'" (*Id.* at p. 1096.) Indeed, Woodbridge does not contend that the trial court improperly calculated the lodestar or the total fee award. It could hardly do so when the trial court accepted defense counsel's suggestions as to the reasonable number of hours spent litigating the matter and the reasonable associate billing rate.

Woodbridge instead argues LaFleur's fee application should have been denied in its entirety as a matter of law because LaFleur has provided no evidence that she made an important contribution to the public interest. Woodbridge's reliance on *Flannery v. California Highway Patrol* (1998) 61 Cal.App.4th 629, for this proposition is misplaced. In *Flannery*, the plaintiff moved for attorney's fees and costs under two separate statutory provisions, Government Code section 12965, subdivision (b) and Code of Civil Procedure section 1021.5. The *Flannery* court held the plaintiff was not entitled to fees under Code of Civil Procedure section 1021.5, because the lawsuit did not confer a significant benefit on the general public or on a large class of persons within the meaning of section 1021.5. Instead, the primary effect of the lawsuit was the vindication of the plaintiff's personal right and economic interest. (*Id.* at p. 637.) Nevertheless, the court held the plaintiff was entitled to a fee award based on Government Code section 12965, subdivision (b). (*Id.* at p. 635.) Thus, *Flannery* does not stand for the proposition that a fee award under FEHA requires the plaintiff show she made an important contribution to the public interest.

Although courts have often looked to the rules set forth in cases interpreting Code of Civil Procedure section 1021.5 to determine an award of attorney's fees under FEHA (*Tipton-Whittingham v. City of Los Angeles* (2004) 34 Cal.4th 604, 610), Woodbridge has failed to cite to any case which holds that a plaintiff suing under FEHA is only entitled to attorney fees if she also meets the public interest requirement of section 1021.5. The California Supreme Court has explained, "When using the lodestar method to calculate attorney fees under the FEHA, the ultimate goal is 'to determine a "reasonable" attorney fee, and not to encourage unnecessary litigation of claims that serve no public purpose either because they have no broad public impact *or because they are factually or legally weak*.'" (*Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970, 985, italics added, fn. omitted.) Here, LaFleur's case was obviously not factually or legally weak. She was entitled to attorney's fees under FEHA as the prevailing party and the trial court did not abuse its discretion in granting them.

8

## DISPOSITION

The judgment is affirmed.  Respondent is awarded costs on appeal.


                                                BIGELOW, P.J.

We concur:


FLIER, J.


GRIMES, J.